*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A22-1675**

State of Minnesota,
Respondent,

vs.

Paul Bradley Lanphear,
Appellant.

**Filed November 13, 2023**
**Affirmed**
**Cochran, Judge**

Stearns County District Court
File No. 73-CR-21-1036

Keith Ellison, Attorney General, Ed Stockmeyer, Assistant Attorney General, St. Paul,
Minnesota; and

Janelle Kendall, Stearns County Attorney, St. Cloud, Minnesota (for respondent)

Andrew C. Wilson, Wilson & Clas, Minneapolis, Minnesota (for appellant)

Considered and decided by Cochran, Presiding Judge; Johnson, Judge; and

Hooten, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to
Minn. Const. art. VI, § 10.

**COCHRAN**, Judge

In this direct appeal from two convictions of first-degree criminal sexual conduct involving a child, appellant challenges the exclusion of certain evidence relating to the child and the denial of his motion for a new trial based on prosecutorial misconduct. Because the district court did not abuse its discretion by excluding the evidence or by denying appellant's motion for a new trial, we affirm.

## FACTS

In February 2021, respondent State of Minnesota charged appellant Paul Bradley Lanphear with two counts of first-degree criminal sexual conduct based on allegations that he sexually abused his then-girlfriend's child. The complaint alleged, based on a forensic interview with the child, that Lanphear sexually assaulted her almost daily between April 2016 and August 2018 and that the last assault occurred when the child was eight years old.

Before trial, the state filed a motion to preclude Lanphear from introducing evidence about a 2015 allegation by the child against her biological father. The disputed evidence showed that Hennepin County Child Protection Intake received a report that, in November 2015 when the child was five years old, she told her maternal grandmother that her father had rubbed her "front private" (vaginal area) over her clothes. Following an investigation, the county found that the child's father maltreated her by sexual abuse. Her father administratively appealed the county's determination to the Minnesota Department of Human Services, and the department reversed following an evidentiary hearing before

2

a human-services judge. The human-services judge determined, based on the child's statements, that the county proved that the child's father "touched or made contact with [the child's] underpants covering her vaginal area" and noted that the child described that the conduct happened after she hit her thigh on a dresser in her father's apartment. The human-services judge found the child to be credible and gave her statements great weight based on the consistency of the child's disclosures to several individuals. But the human-services judge determined that the county failed to prove that the child's father touched her with sexual or aggressive intent, as required to prove maltreatment by sexual abuse. For that reason, the human-services judge recommended that the department reverse the county's maltreatment determination, and the department agreed.

The state argued that evidence relating to the 2015 allegation should be excluded under Minnesota Rule of Evidence 412(1)(A) and Minnesota Statutes section 609.347, subdivision 3 (2022), which govern the admissibility of evidence of an alleged victim's sexual history. Lanphear opposed the state's motion, arguing that the evidence was admissible under rule 412 as evidence of a past false allegation of criminal sexual conduct. The district court initially granted the state's motion to preclude Lanphear from introducing the evidence. Lanphear then filed a motion for reconsideration, which included the human-services judge's report and an affidavit from the child's father filed in another matter. Based on the motion, the district court decided to reconsider the matter and scheduled an evidentiary hearing to receive Lanphear's offer of proof.

At the hearing, Lanphear submitted his offer of proof, which included testimony from the child's mother as well as father's affidavit and the human-services judge's report.

3

In a subsequent order, the district court affirmed its earlier order excluding the evidence under Minnesota Rule of Evidence 412. The district court concluded that Lanphear "ha[d] not shown that [the child's] allegations were false, that the probative value of her past conduct outweighs its prejudicial value, or that his constitutional rights will be infringed by his inability to introduce this evidence."

The state's case against Lanphear proceeded to a jury trial in May 2022. At trial, the child testified that Lanphear rubbed her chest and "private part," kissed her and had her touch his "private part" "in an up-and-down motion" with her hand, put his "private part" in her mouth and "outside" her "private part." She testified that "white stuff" came out of his private part "more than one time." The child said this happened "every day" when they were living at the "blue" house while her mother was at work and Lanphear was watching her and her younger siblings. She explained that the sexual abuse by Lanphear would happen when her siblings were napping. The child testified that the touches continued after the family moved to a different house and happened less often, but the touches stopped only when Lanphear moved out to an apartment. In the forensic interview played for the jury, the child provided consistent descriptions of the sexual abuse.

The child's mother testified that Lanphear lived with their family from April 2016 through August 2018, that Lanphear would watch the children while she was at work, and that Lanphear was "more . . . touchy" with the child than her other children. In addition, the child's grandmother testified that, once when she showed up unannounced at the child's house, Lanphear "came down the stairs with his pants unbuckled." The next day, the child's mother informed grandmother that Lanphear "said [grandmother] was no longer

4

welcome there without an invitation." Although the house had generally been unlocked, after that, the house door was always locked.

Lanphear called one witness, a victim-assistance coordinator from the county attorney's office. The coordinator testified that, before trial, the child said she found a hidden camera with naked pictures of her, that Lanphear gave her a secret cellphone and contacted her on it, and that the child's mother had walked in on Lanphear and the child naked under the covers. On cross-examination, the defense elicited testimony from the child that she did not find a hidden camera. Defense also elicited testimony from the child's mother that the cellphone Lanphear gave the child did not work and that the mother did not walk in on the two naked but did find them sleeping together one day. In closing, the defense argued that the child was not credible because of these inconsistencies. The jury found Lanphear guilty of both counts of first-degree criminal sexual conduct.

Following the verdict, Lanphear moved for a new trial based on alleged prosecutorial misconduct during the closing arguments, which the state opposed. The district court denied Lanphear's motion for a new trial. The district court entered convictions for both counts and imposed an executed sentence of 172 months for count 1. Lanphear appeals.

**DECISION**

On appeal, Lanphear argues that he is entitled to a new trial because the district court (1) improperly excluded evidence related to the child's 2015 allegation against her father and (2) abused its discretion by denying his motion for a new trial. We address each argument in turn.

**I.**     **The district court did not abuse its discretion by excluding evidence of the child's 2015 allegation.**

Lanphear first challenges the district court's exclusion of evidence relating to the child's 2015 allegation that her father touched her vaginal area. He argues that the exclusion violated his constitutional right to present a complete defense.

"Evidentiary rulings are reviewed for an abuse of discretion, even when a constitutional violation is alleged." *State v. Wenthe*, 865 N.W.2d 293, 306 (Minn. 2015). "A district court abuses its discretion when its decision is based on an erroneous view of the law or is against logic and the facts in the record." *State v. Hallmark*, 927 N.W.2d 281, 291 (Minn. 2019) (quotation omitted).

In prosecutions for acts of criminal sexual conduct, a victim's sexual history is generally excluded by Minnesota Rule of Evidence 412 and Minnesota Statutes section 609.347, subdivision 3, also known as the "rape-shield law." *See Wenthe*, 865 N.W.2d at 305-06. Under the rape-shield law, "evidence of the victim's previous sexual conduct shall not be admitted nor shall any reference to such conduct be made in the presence of the jury, except by court order." Minn. R. Evid. 412(1); *see also* Minn. Stat. § 609.347, subd. 3. Previous "sexual conduct" includes prior allegations of sexual abuse. *State v. Kobow*, 466 N.W.2d 747, 750 (Minn. App. 1991), *rev. denied* (Minn. Apr. 18, 1991).

The defendant's constitutional right to present a complete defense creates an exception to the rape-shield law. *See State v. Caswell*, 320 N.W.2d 417, 419 (Minn. 1982) (holding that a victim's past sexual conduct is admissible when constitutionally required);

6

*Wenthe*, 865 N.W.2d at 306 (explaining that sexual-history evidence is admissible when "constitutionally required by the defendant's right to due process, his right to confront his accusers, or his right to offer evidence in his own defense" (quotation omitted)). Thus, evidence of a prior false accusation of sexual abuse by a child complainant "is admissible to challenge the credibility of the children and as substantive evidence tending to prove the current offense did not occur," and excluding such evidence "violates a defendant's constitutional right to present a defense." *State v. Goldenstein*, 505 N.W.2d 332, 335 (Minn. App. 1993), *rev. denied* (Minn. Oct. 19, 1993). But for such evidence to be admissible, the district court must first make a "threshold determination" that "a reasonable probability of falsity exists." *Id.* at 340. And such evidence may still be excluded if the probative value of the evidence is substantially outweighed by its inflammatory or prejudicial nature. Minn. R. Evid. 412(1); *Kobow*, 466 N.W.2d at 750-51 (explaining that, even when evidence is constitutionally required, the district court must "weigh the probative value against the prejudicial effect of testimony regarding her sexual conduct under [rule 412[1]]").

The district court excluded evidence of the 2015 allegation after determining that Lanphear's "offer of proof [did] not show that there is reasonable probability that [the child's] allegation" was false. The district court also determined that, because there was not a reasonable probability of falsity, the evidence's "limited probative value" was outweighed by the highly prejudicial effect of introducing a child victim's sexual history.

---

[1] *Kobow* cited Minnesota Rule of Evidence 404(c), which was renumbered as rule 412. The balancing test did not change.

Lanphear challenges both the district court's threshold determination of falsity and its evaluation of the evidence's probative value, arguing that the district court should have concluded that there is a reasonable probability that the child's sexual abuse allegation was false because the county's maltreatment finding was reversed. We are not persuaded.

As the district court explained in its thorough and well-reasoned order, Lanphear conflates the truth or falsity of the child's allegation about her father's conduct with the county's burden to prove that her father maltreated her by sexual abuse. The human-services judge recommended reversing the maltreatment finding because the county failed to prove that the child's father acted with sexual or aggressive intent when he touched her, as required to prove sexual abuse under the relevant criminal-sexual-conduct statutes.[2] But the human-services judge did not find that the child's allegation about her father's conduct was not credible. To the contrary, the human-services judge determined that the county proved "it is more likely than not [her father] touched or made contact with [the child's] underpants covering her vaginal area" based on the child's credible and consistent disclosures. The human-services judge noted that the child consistently described the incident to several people and indicated that the touch occurred after she hit her thigh on a dresser in father's apartment. Also, in her disclosures, the child did not describe her father's intent or describe his actions as sexual. As a result, the reversal of the maltreatment finding is not evidence that *the child's*

---

[2] The applicable statutes criminalize nonconsensual touching of clothing covering the primary genital area and groin when committed with sexual or aggressive intent. Minn. Stat. §§ 609.343, subd. 1(a), .341, subds. 5, 11 (2014).

allegation about her father was false. We therefore conclude that the district court did not abuse its discretion by determining that Lanphear failed to show a reasonable probability of falsity.

The district court also did not abuse its discretion when it determined that "the limited probative value of the evidence does not outweigh the substantial prejudicial value of introducing [the child's] sexual history." "Evidence is relevant and has probative value when it, in some degree, advances the inquiry." *State v. Smith*, 932 N.W.2d 257, 269 (Minn. 2019) (quotation omitted). And the rape-shield law "serves to remind the bench that the victim's sexual history is normally irrelevant in a sexual assault prosecution." *State v. Crims*, 540 N.W.2d 860, 867 (Minn. App. 1995), *rev. denied* (Minn. Jan. 23, 1996). Thus, while a prior *false* allegation would have been relevant to the child's credibility and to show that the sexual assaults did not occur, *see Goldenstein*, 505 N.W.2d at 335, the district court properly determined that the child's prior credible allegation involving her father did not make it more or less probable that the child fabricated the allegations about Lanphear. Moreover, Lanphear does not appear to challenge the district court's determination that introduction of the evidence would have been highly prejudicial. Accordingly, we discern no abuse of discretion in the district court's determination that the evidence's potential prejudicial effect outweighed its probative value. The district court acted well within its discretion by excluding evidence of the 2015 allegation.

**II. The district court did not abuse its discretion by denying Lanphear's motion for a new trial.**

Lanphear next challenges the district court's denial of his motion for a new trial. Appellate courts "review the denial of a motion for a new trial for an abuse of discretion." *State v. Green*, 747 N.W.2d 912, 917 (Minn. 2008).

Following the guilty verdict, Lanphear moved for a new trial based on alleged prosecutorial misconduct during the prosecutor's closing argument. In the motion, Lanphear identified at least three separate grounds. On appeal, Lanphear challenges only one of those grounds, which involves a specific portion of the prosecutor's closing argument. Lanphear did not object to this portion of the closing argument at trial. The plain-error standard applies to alleged error that is not objected to at trial whether raised in a motion for a new trial or on appeal. *Montanaro v. State*, 802 N.W.2d 726, 732 (Minn. 2011); *see* Minn. R. Crim. P. 31.02. Lanphear therefore must show plain error to establish that the district court abused its discretion by denying his motion for a new trial.

Because Lanphear alleges prosecutorial misconduct, we apply the modified plain-error standard. *State v. Parker*, 901 N.W.2d 917, 925-26 (Minn. 2017). Under this standard, a defendant has the burden of proving that the alleged misconduct constitutes an error that is plain. *Id.* at 926 (citing *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006)). An error is plain "if the error contravenes case law, a rule, or a standard of conduct." *Ramey*, 721 N.W.2d at 302. If a defendant establishes this burden, the burden then shifts to the state to prove that the unobjected-to misconduct did not affect the defendant's substantial rights. *Id.* If the defendant establishes an error that is plain and the state does

not meet its burden, "the appellate court then assesses whether it should address the error to ensure fairness and the integrity of the judicial proceedings." *State v. Davis*, 735 N.W.2d 674, 682 (Minn. 2007) (quotation omitted); *see also Pulczinski v. State*, 972 N.W.2d 347, 356 (Minn. 2022) ("[A]n appellate court may correct the error only when it seriously affects the fairness, integrity, or public reputation of judicial proceedings."). But if the defendant does not prove an error that is plain, an appellate court need not reach the next steps in the plain-error analysis. *See State v. Lilienthal*, 889 N.W.2d 780, 785 (Minn. 2017).

The prosecution "may present 'all legitimate arguments on the evidence and all proper inferences that can be drawn from that evidence' in its closing argument." *State v. Munt*, 831 N.W.2d 569, 587 (Minn. 2013) (quoting *State v. Pearson*, 775 N.W.2d 155, 163 (Minn. 2009)). "We view the closing argument 'as a whole, rather than just selective phrases or remarks that may be taken out of context or given undue prominence to determine whether reversible error has occurred.'" *Id.* (quoting *State v. McDaniel*, 777 N.W.2d 739, 751 (Minn. 2010)).

During closing, the state argued that the child was credible for several reasons. One of the reasons argued by the prosecutor was that:

> [S]he had knowledge of things no 12-year-old should know. Moving her hand up and down his penis. How did she know that? She told you: He told me to do it. Then putting a penis in her mouth. She told you: He did that. Licking her vagina: That was him. White stuff coming out of a penis. That is not something possibly an 11-year-old can know unless they saw it happen. Putting his penis on her vagina and moving his body up and down. Putting his penis between the lips of her vagina and moving his body up and down. Rub her vagina.

11

> Again, this goes back to her describing these things she doesn't have the vocabulary for.
>
> We know what stuff coming out of a penis is, semen, ejaculate. She doesn't know that. We know that someone putting a penis between the lips of a vagina and moving up and down is sex. She doesn't know that. We know moving your hands up and down on a penis is referred to as a hand job. She doesn't know that because she shouldn't. She shouldn't know that because she should have had, she shouldn't have had to do it.

Lanphear contends that, in making this argument, the prosecution improperly suggested that Lanphear was the sole source of the child's knowledge of sexual activity when, according to Lanphear, the prosecution knew that the excluded 2015 allegation could be the source of the child's knowledge. We disagree.

The prosecution's closing argument regarding the child's source of knowledge, viewed as a whole, does not constitute plain error. As the district court correctly stated in its order, the sole sexual act listed in the prosecutor's closing argument that is consistent with the 2015 allegation is the phrase, "Rub her vagina." The other detailed and graphic descriptions of sexual activity identified during the prosecution's closing argument are consistent *only* with the child's testimony about Lanphear, not with the prior allegation. Thus, taken as a whole, the prosecution's argument is a legitimate inference from the trial testimony and evidence and does not implicate the excluded evidence. *See Munt*, 831 N.W.2d at 587. We therefore conclude that Lanphear has failed to demonstrate the prosecutor engaged in misconduct, and the district court did not abuse its discretion by denying Lanphear's motion for a new trial.

12

In sum, Lanphear has not identified any basis for reversing his convictions of first-degree criminal sexual conduct.

**Affirmed.**