**STATE of Minnesota, Respondent,**

v.

**Roger Jerome DAY, Appellant.**

**No. C1–92–1650.**

Court of Appeals of Minnesota.

June 15, 1993.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Michael O. Freeman, Hennepin County Atty., Paul R. Scoggin, Asst. County Atty., Minneapolis, for respondent.

Daniel A. O'Fallon, Robins, Kaplan, Miller & Ciresi, Minneapolis, for appellant.

Considered and decided by PARKER, P.J., and FORSBERG and HOLTAN,* JJ.

## OPINION

FORSBERG, Judge.

This appeal is from a judgment of conviction of fourth degree criminal sexual conduct. Minn.Stat. § 609.345, subd. 1(h) (1990). We affirm.

## FACTS

Appellant Dr. Roger Day was in a psychiatric residency program at the Universi-

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn.Const. art. VI, § 10.

ty of Minnesota in 1990. In the spring of 1990, J.H., a woman suffering from depression, was referred to Day for psychotherapy. Day counseled J.H. for nearly a year, until the incident on March 20, 1991 which is the basis for the criminal charges against him.

J.H. testified that on March 20 they had a therapy session at her house because she could not come to Day's office. She testified Day initiated a "pretend sex session," which started with them kneeling on the floor and hugging each other. After awhile, J.H. noticed that Day had an erection. She testified Day was holding her tight, and that he touched her backside "just below my waist a little bit."

Day asked J.H. to tell him a fantasy about the two of them. He then took J.H.'s hands in his own and moved them into contact with the clothing over his penis and her vagina.

After J.H. ended the counseling relationship and contacted police, she set up a telephone call that the police recorded and was later played for the jury. In the call, Day admitted he had been sexually excited. Day could not remember touching J.H.'s buttocks. He admitted the genital touching, but claimed it was something they had done together with both their hands.

The trial court denied Day's motion for a judgment of acquittal. The court gave an instruction on "coercion" requested by the state, and denied Day's request for a definition of "force." The jury found Day guilty of fourth degree criminal sexual conduct, the only count submitted. The verdict did not require the jury to specify which part of the statute defining "sexual contact" was violated.

## ISSUES

1. Did the trial court err in instructing the jury on the nature of "coercion" required for patient-to-therapist sexual contact?

2. Is the evidence sufficient to prove any of the patient-to-therapist sexual contact violated the statute?

3. Was appellant denied his right to a unanimous verdict by allowing the jury to convict him for either therapist-to-patient or patient-to-therapist contact?

## ANALYSIS

### I.

The "sexual contact" required for fourth degree criminal sexual conduct may be committed by the defendant touching the complainant, or by

> the touching by the complainant of the actor's, the complainant's, or another's intimate parts *effected by coercion* or by use of a position of authority, or by inducement if the complainant is under 13 years of age or mentally impaired.

Minn.Stat. § 609.341, subd. 11(a)(ii) (1990) (emphasis added).

■■■ Day contends the jury was not properly instructed on the "coercion" required for a patient-to-therapist touch to constitute criminal sexual conduct. Trial courts have "considerable latitude" in selecting language for the jury instructions. *State v. Gray*, 456 N.W.2d 251, 258 (Minn. 1990) (quoting *Alholm v. Witt*, 394 N.W.2d 488, 490 (Minn.1986)). A refusal to give a requested jury instruction lies within the discretion of the trial court. *State v. Daniels*, 361 N.W.2d 819, 831 (Minn.1985). In order to show prima facie evidence of error, an appellant must show the instruction given contained "a material misstatement of the law when read in the context of the instructions as a whole." *State v. Turnipseed*, 297 N.W.2d 308, 312 (Minn.1980).

In the context of the criminal sexual conduct statutes,

> "[c]oercion" means words or circumstances that cause the complainant reasonably to fear that the actor will inflict bodily harm upon, or hold in confinement, the complainant or another, or force the complainant to submit to sexual penetration or contact, but proof of coercion does not require proof of a specific act or threat.

Minn.Stat. § 609.341, subd. 14 (1990). The trial court, omitting part of the statutory

definition, gave the following definition of "coercion":

Coercion means words or circumstances that force the complainant to submit to sexual contact, but proof of coercion does not require proof of a specific act or threat.

The trial court's definition eliminated the statutory reference to fear of bodily harm or confinement. We agree with Day's argument that this instruction appears to dilute the "coercion" requirement. However, we conclude the trial court's instruction is supported by the rules of grammar and ordinary usage, and by the history of the statute. *See* Minn.Stat. § 645.08(1) (1992) (words in statute are construed according to rules of grammar and their common and approved usage).

The issue in construing the statute is whether the phrase retained by the trial court, "or force the complainant to submit" is part of, or severable from, the omitted phrases concerning the fear of bodily harm or confinement. *See* Minn.Stat. § 609.341, subd. 14. The statute could grammatically be read either way. However, it makes less sense to read the statute as referring to a reasonable fear that "the actor" will force the complainant to submit to sexual contact, because that act is the criminal offense itself. *See id.* Moreover, the phrases "cause the complainant" and "force the complainant" are so similar as to suggest they were intended to be parallel and to take the same subject ("words or circumstances"). *Id.* Thus, the intervening phrases can be severed without loss of meaning.

The legislature in 1987 amended the definition of "coercion" to include the phrase "or force the complainant to submit to sexual penetration or contact." 1987 Minn. Laws, ch. 198, § 3. If this phrase is read, as Day suggests, merely to supplement the "reasonable fear" requirement, the amendment would effect no meaningful change in the statute. *Cf. City of Crystal Police Relief Ass'n v. City of Crystal,* 477 N.W.2d 728, 731 (Minn.App.1991) (amendment of statute is presumed intended to make some change in existing law), *pet. for rev. de-*nied (Minn. Jan. 17, 1992). The amendment appears to be intended to ease the burden of proving "coercion."

■ Day contends the trial court should have defined "force" as it is used in the definition of "coercion." However, "force" in that definition is used as a verb rather than as a noun. Minn.Stat. § 609.341, subd. 3 (1990) defines "force" as a noun, and is an element in sexual offenses. *See, e.g.,* Minn.Stat. § 609.342, subd. ´ 1(e)(i) (1990). In this context it requires at least the threat of bodily harm or commission of crime. Minn.Stat. § 609.341, subd. 3. This is an even higher standard for showing "force" than the language omitted by the trial court in defining "coercion." That use requires only a reasonable fear of bodily harm, not an actual threat. *See* Minn.Stat. § 609.341, subd. 14. Therefore, if the definition of "force" were incorporated into the definition of "coercion," as Day requested, it would negate the apparent 1987 legislative intent to make coercion easier to show and the specific proviso that "proof of coercion does not require proof of a specific act or threat." Minn.Stat. § 609.341, subd. 14.

The trial court's instruction on "coercion" was in keeping with the intent of the relevant statutes and within the court's "considerable latitude." *See generally State v. Gray,* 456 N.W.2d at 258–59. We therefore affirm the trial court on this issue.

## II.

■ Day contends there was insufficient evidence of patient-to-therapist contact satisfying any of the alternative statutory conditions. *See* Minn.Stat. § 609.341, subd. 11(a)(ii) (contact must be effected by coercion, use of a position of authority, or inducement of one mentally impaired). This court, in reviewing a challenge to the sufficiency of the evidence, must assume the factfinder believed the state's witnesses and disbelieved contrary evidence. *State v. Bias,* 419 N.W.2d 480, 484 (Minn.1988). This court must view the evidence and any reasonable inferences that could be drawn from it in a light most favorable to the state. *Id.*

J.H. described the incident on March 20 as one in which Day took control to the point of telling her she was not going to have any coffee. She described how he took her hands firmly in his hands, and guided them to the genital areas. When she twice pulled her hands away, Day told her she was giving up her power, and grasped her hands again. Day's conduct was far more coercive than the normal therapist-patient relationship. *Cf. State v. Ohrtman*, 466 N.W.2d 1, 3 (Minn.App.1991) (counseling relationship does not by itself constitute coercion). By taking complete control of the counseling session, grasping J.H.'s hands and virtually compelling her, despite her protests, to engage in sexual touching, he was "forc[ing] the complainant to engage in sexual * * * contact." Minn.Stat. § 609.341, subd. 14.

We agree with Day that the evidence was insufficient to establish that J.H. was "mentally impaired" so as to be unable to give reasoned consent. *See* Minn.Stat. § 609.341, subd. 6 (1990). Such evidence, however, is not required to support the conviction.

### III.

Day argues he was denied his right to a unanimous verdict and due process because of the disjunctive jury instruction. This allowed the jury to convict him for touching J.H., or for J.H. touching him by means of coercion, or for J.H. touching him by means of inducement (if she was "mentally impaired").

In *State v. Hart*, 477 N.W.2d 732 (Minn. App.1991), *pet. for rev. denied* (Minn. Jan. 16, 1992), this court held a defendant's right to a unanimous verdict was not violated when jury instructions allowed the jury to convict for first degree criminal sexual conduct if the victim either suffered personal injury or submitted due to a threat of bodily harm. *Id.* at 739 (citing *Shad v. Arizona*, — U.S. —, —, 111 S.Ct. 2491, 2499, 115 L.Ed.2d 555 (1991)). This court discouraged disjunctive "either/or" instructions, but held "[o]n the relatively undisputed facts leading to the charge" there was no reversible error. *Id.*

The facts of the March 20 incident are also "relatively undisputed." We have concluded the evidence of "coerced" patient-to-therapist contact is strong. J.H. also testified that Day touched her buttocks. Only the evidence that the patient-to-therapist contact was facilitated by the patient's "mental impairment," is insufficient. These alternative theories were all alternative "means" of committing the offense. Under *Schad* and *Hart*, Day was not denied his right to a unanimous verdict.

### DECISION

The trial court did not err in instructing the jury. The general verdict form and instructions did not deny appellant the right to a unanimous verdict. The evidence is sufficient to support the conviction.

**Affirmed.**